FILED

97 FEB -6 AM 9: 38

U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

Roderick Harris, )
    Plaintiff(s); )
   )
-vs )   Nos. CV 95-P-3311-S &
   )   CV 96-P-372-S
Marvin T. Runyon, )
Postmaster, )
    Defendant(s). )

ENTERED

FEB 6 1997

## OPINION

For the following reasons, the Defendant's Motion for Summary Judgment is hereby GRANTED.

Under the Federal Rules of Civil Procedure Rule 56(b), a party may move for summary judgment in its favor as to all or part of the asserted claims. The moving party bears the initial burden of informing the court of the basis of its motion which it asserts demonstrates a lack of genuine issues of material fact.[1] Once this burden has been met, the party opposing the motion cannot rest upon its own bare allegations but must come forward with evidence that a genuine issue of material fact does indeed exist.[2] The Court considered all the evidence submitted in making its rulings.

### Facts

Harris filed a suit on December 26, 1995 very generally alleging racial discrimination for

---

1. See, e.g., *Celotex v. Catrett*, 477 U.S. 317 (1986).

2. *Id.*

1

disciplinary action taken against him which resulted in a seven day and fourteen day suspension. On February 3, 1996, Harris filed a second, separate suit alleging gender discrimination which resulted a seven day suspension and a letter of demand. The two cases were consolidated by order of this Court.

The Plaintiff ("Harris"), a black male, is employed by the United States Postal Service as a distribution/window clerk at the Post Office in Eutaw, Alabama. The Plaintiff's claims arise from a series of events beginning in mid-1994.

The claims of gender discrimination arise from the following facts.[3] On or about July 7, 1994, while Harris was on duty, a registered item containing $2,350 in cash was discovered missing from the Eutaw Post Office safe. Harris apparently opened the safe in the morning and identified the envelope containing the deposit. He left the safe unlocked while he conducted business that morning. The envelope was discovered missing later in the morning. The Post Office conducted an investigation in which Harris admitted that he failed to lock the safe and failed to place the envelope in a secured area. After the investigation, April Williams, the Officer in Charge, issued a seven day suspension to Harris for failing to secure a registered item and issued a letter of demand to Harris for the $2,350 shortage. Harris appealed this action through the Postal Service's Grievance-Arbitration procedures. As a result of pre-arbitration discussions, full settlement of the complaint resulted in the suspension being reduced to a letter of warning. Harris was paid for the time he was suspension.

In the suit alleging racial discrimination, the seven day suspension complained about by

---

3. These claims were contained in the case filed on February 15, 1996 and consolidated with this case. Although these facts arise from the second suit filed, the events occurred prior to those which give rise to the first complaint. Therefore, the facts concerning the gender discrimination claims are addressed first.

Harris involves the following, complicated facts.[4/] In November 1994, Harris injured his thumb. It appears that Harris was off work since early December 1994 because of this injury. On January 26, 1995, Harris filed an injury claim with the Post Office in which he stated that his work-related duties aggravated his thumb injury. During February, it appears that Harris requested a light duty assignment but none were available in the Eutaw Post Office. On March 14, 1995, Harris's physician, Dr. Kissel, sent a status report to the Post Office's Injury Compensation Office which released Harris to return to regular work duty on March 16, 1995. Ms. Jean Prewitt, the Human Resource Specialist who was working on Harris's claim, notified Terry Sims, the Postmaster of the Eutaw Post Office, of Harris's release to regular duty effective March 16, 1995. On March 15, 1995, Harris wrote to Dr. Kissel asking that he not be released to regular work duty but instead to light duty. Dr. Kissel then approved him for light duty for an additional six weeks. Harris failed to report to work on March 16 and Sims wrote him a letter informing him that he would be scheduled to return to work without limitation on March 18, 1995. Harris did not report for work and did not respond to this letter. On March 20, 1995, Prewitt contacted Dr. Kissel in response to the change in he made from regular duty to light duty requesting additional information with regard to the change. On March 23, Dr. Kissel responded by completing the form and indicating that the only restriction was a limitation on lifting in excess of 20 pounds. On March 24, a Temporary Limited Duty Job Offer, starting March 25, was forwarded to Harris along with a letter from Prewitt which indicated that Harris had been informed about the Temporary Limited Duty Job and instructed to report for work on March 28 by Connie Baker.

---

4. This claim was contained in the first complaint filed on December 26, 1995 regarding Terry Sims, the Postmaster of the Eutaw Post Office.

3

Harris signed the Job Offer and returned it to Prewitt along with a note indicating that he would report to work on April 3. Harris eventually reported to work on April 3. On April 10, Sims, relying on Prewitt's information that Harris was instructed to report for work on March 28,[5] issued Harris a seven day suspension for being absent without leave ("AWOL") according to Postal Service policy[6] for his failure to return to work as scheduled on March 28 and not reporting in until April 3.

The fourteen day suspension complained about by Harris arises from the following facts. On May 4, 1995, Sims left the Post Office to attend a meeting and instructed Harris, who was the only window clerk on the premises, to remain in the Post office until Sims returned. Harris left for his lunch break prior to Sims return, leaving the building empty. Sims issued a fourteen day suspension to Harris for failure to follow instructions.

## ANALYSIS.

The Defendant has moved for summary judgment as to all of Harris's claims. Harris makes general claims of racial and gender discrimination[7] in discipline.

Under Title VII and 42 U.S.C. § 1981,[8] a plaintiff must make a prima facie showing of discrimination. Where the plaintiff complains of disparate treatment regarding disciplinary action, he can establish a prima facie case if he can show that an action was taken against him but not

---

5. Declaration of Robert T. Sims. Harris has not disputed that Sims relied on Prewitt's statements.

6. Employee and Labor Relations Manual, § 666.82.

7. Harris does not allege a hostile work environment or sexual harassment in the sense of quid pro quo. The thrust of his claims is that he was treated differently because he was a male.

8. Although the Plaintiff fails to specify which statutes he is relying on to proceed, it appears from the material submitted and types of arguments that the Plaintiff has put forward that he is proceeding under Title VII and §1981.

4

against one outside his class who is similarly situated for violating the same work rule.[9] The activity of the plaintiff must have been nearly identical to that of the other employee who was not disciplined.[10] If the plaintiff makes this prima facie showing, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for its actions.[11]

Harris has generally claimed discrimination in discipline during his employment with the Post Office. Harris alleges in his complaint that the actions taken against him were motivated by racial and gender discrimination. Although he never alleges the facts in his complaint of racial discrimination, he argues in his brief that another employee, Mary Peeks, "frequently uses sick leave and she has never been disciplined." He has not submitted any evidence to support this allegation. In his complaint of gender discrimination,[12] Harris does not allege any specific facts as to who was treated differently or how they were treated. As to his claims of gender discrimination, he argues in his brief that another employee, Mrs. Davis, was not disciplined for the loss of the registered item even though Mrs. Davis was present at the time. However, Harris submitted no evidence to support this allegation. He has not alleged any facts or come forward with any evidence which indicate that Peeks and Davis were similarly situated individuals and that the activities engaged in by Peeks and Davis were nearly identical to his conduct and that disciplinary action against them was different.[13]

In its brief, the Defendant argues that, even if Harris makes his prima facie showing as to

---

9. See, *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. 1982).

10. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181 (1984).

11. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

12. See Harris's Amended Complaint.

13. See, *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. 1982).

5

the racial discrimination claims, the Defendant has articulated a legitimate, non-discriminatory reason for disciplining Harris. The Defendant's articulated reason for disciplining Harris was for being AWOL and for failing to follow instructions. In addressing Harris's claims of gender discrimination, the Defendant's articulated reason for disciplining Harris was for failing to secure a registered item. None of these reasons is facially discriminatory.

Under *Burdine*, if the Defendant has articulated a non-discriminatory reason for its action, the plaintiff must come forward with evidence that the stated reason is a pretext or "sham."[14] In this case, Harris has not offered any evidence, other than his bare allegations, that other employees were disciplined differently from which a discriminatory intent might be inferred. Harris does not seem to be disputing that Sims relied on the report from Prewitt that Harris had been told to report for work when Sims issued the seven day suspension. In his brief he simply alleges that another employee took sick leave without being disciplined. Also, Harris does not seem to be disputing that Sims told him to remain in the Post Office until Sims returned from his meeting. Rather, Harris complains about being disciplined for taking his lunch break. With respect to all of his claims, Harris argues others were treated differently but he fails to allege any facts which indicate that the people who he claims were treated differently acted in a manner substantially similar to his own and that race or gender had a determinative influence on the disciplinary actions. Harris claims that others were treated differently are not supported by evidence sufficient to raise a genuine question of material fact.

Based on the foregoing reasons, the Court finds that there is no genuine issue of material

---

14. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

fact and the Defendant's Motion for Summary Judgment on all the Plaintiff's claims of discrimination is hereby GRANTED.

Date: February __5__, 1997

Chief Judge Sam C. Pointer, Jr.

Service List:
    Mr. Roderick Harris
    Ms. Caryl P. Privett
    Mr. John C. Bell